IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TRACY LYNN FRAZIER, )
)
Plaintiff, )
)
v. ) Civil Action No. 14-571
)
CAROLYN W. COLVIN, )
ACTING COMMISSIONER OF )
SOCIAL SECURITY, )
)
Defendant. )

## MEMORANDUM AND ORDER OF COURT

AND NOW, this 31st day of March, 2016, upon due consideration of the parties' cross-motions for summary judgment relating to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for supplemental security income under Title XVI of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 12) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 10) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed her pending application for supplemental security income on June 22, 2010, alleging a disability onset date of January 28, 2010, due to peripheral neuropathy, fibromyalgia and chronic obstructive pulmonary disease. (R. 342). Plaintiff's application was denied initially. At plaintiff's request an ALJ held a brief hearing on April 11, 2012, at which plaintiff, represented by counsel, appeared. A supplemental video hearing was held on September 5, 2012, at which the court heard the testimony of a medical expert, Dr. Stuart Gitlow. Plaintiff, represented by counsel, also testified at the supplemental hearing. On October 25, 2012, the ALJ issued a decision finding that plaintiff is not disabled. On February 25, 2014, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 49 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §416.963(c). She has at least a high school education and she has no past relevant work experience. While plaintiff reported to her treatment providers that she had been working as a house painter, the record contains no reported earnings since 2007, so the ALJ found that plaintiff has not engaged in any substantial gainful activity since her alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff, the medical expert and the vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although plaintiff has the severe impairments of degenerative disc disease of the cervical spine, chronic obstructive pulmonary disease (COPD), chronic bronchitis, fibromyalgia, rheumatoid arthritis and cannabis dependence, those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains the residual functional capacity to engage in work at the light exertional level, but with the following limitations: she must be afforded the option to alternate between sitting and standing at a maximum frequency of every 30 minutes; she is limited to occasional postural maneuvers; she is limited to simple, routine, and repetitive tasks that are not fast-paced and require only simple, work-related decisions; she may have incidental collaboration with co-workers and the public, and interaction with supervisors one-sixth of the time. (R. 21).

Taking into account these restrictions, a vocational expert identified numerous categories of jobs which plaintiff can perform based upon her age, education, work experience and residual functional capacity, including linen folder, remnant sorter and garment packer. Relying on the vocational expert's testimony, the ALJ found that plaintiff is capable of making an adjustment to numerous jobs existing in significant numbers in the national economy. Accordingly, the ALJ concluded that plaintiff is not disabled under the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[1] 20 C.F.R.

---

[1] The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past-relevant work; and, (5) if so, whether the claimant can
AO 72
(Rev. 8/82)

§416.920. If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; *see* Barnhart v. Thomas, 540 U.S. 20 (2003).

Here, plaintiff raises a number of challenges to the ALJ's decision: (1) the ALJ erred in concluding that plaintiff does not have a medically determinable severe mental health impairment other than cannabis dependence; (2) the ALJ erred in rejecting the opinions of her treating psychiatrist and a consultative psychologist; (3) the ALJ erred at step 3 by finding that plaintiff does not meet the criteria of any listed impairment; (4) the ALJ improperly assessed plaintiff's residual functional capacity; and, (5), the ALJ erroneously relied on the vocational expert's response to an incomplete hypothetical that failed to account for all of plaintiff's limitations. Upon review, the court is satisfied that all of the ALJ's findings and conclusions are supported by substantial evidence.

Plaintiff's first argument is that the ALJ erred when he found that plaintiff's non-substance abuse mental health impairments are not "medically determinable" impairments within the meaning of the regulations. Plaintiff argues that she has been diagnosed on numerous occasions with various mental health impairments including, *inter alia*, depression, mood disorder, and post-traumatic stress disorder, and that the ALJ erred in finding that these disorders are not "medically determinable" impairments because they were not properly diagnosed "as a matter of medical science." The court is satisfied that the ALJ's conclusion is supported by substantial evidence.

---

perform any other work which exists in the national economy, in light of her age, education, work experience, and residual functional capacity. 20 C.F.R. §416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.3d at 432; 20 C.F.R. §416.920a.

"Disability" under the regulations is defined as "the inability to do substantial gainful activity by reason of any medically determinable physical or mental impairment." 20 C.F.R. §416.905. By its basic definition an impairment means "a medically determinable impairment" (20 C.F.R. §416.902), and therefore it "must result from anatomical, physiological or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §416.908. An impairment must be established by medical evidence "consisting of signs, symptoms and laboratory findings," not merely a claimant's statement of symptoms. Id.

Here, the ALJ acknowledged the diagnoses of mental health impairments by plaintiff's treating sources, but he rejected those diagnoses in reliance on the opinion of the medical expert, Dr. Stuart Gitlow, who testified that it is "not medically correct to make a diagnosis of a non-substance abuse related mental disorder unless the patient is free from all psychoactive substances (such as illegal drugs or alcohol) for a sufficient period of time confirmed by lab reports." (R. 18)(emphasis added). Dr. Gitlow further testified that in the absence of "a documented and confirmed period of sobriety," the only supportable diagnosis in this case, and the cause of plaintiff's mental health symptoms, is cannabis dependence. (Id.)

The ALJ noted that Dr. Gitlow's opinion that a non-substance abuse disorder is not a proper diagnosis unless there is a sufficient period of sobriety "is not a controversial position" but is clearly set forth in the Diagnostic and Statistical Manual for Mental Disorders ("DSM"). Accepting Dr. Gitlow's testimony, the ALJ found that plaintiff's other mental health "impairments" were not properly diagnosed but instead "are symptoms of [plaintiff's] cannabis dependence." (R. 18).

The court finds no error in the ALJ's reliance on Dr. Gitlow's testimony. Dr. Gitlow is a non-examining medical expert who is a "nationally recognized expert in issues of drug and alcohol abuse/dependence and the impact of those issues on psychological functioning and diagnosis." (R. 18). As a non-examining medical source, his opinion is to be evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors, including the opinion's supportability, consistency and specialization. 20 C.F.R. §416.927(c).

Moreover, the record in this case is clear that plaintiff has a long-standing history of alcohol and drug abuse, primarily marijuana, but also crack cocaine. The consultative examiner, Dr. T. David Newman, reported in March of 2011 that plaintiff used marijuana daily. (R. 337). At the hearing on September 5, 2012, plaintiff testified that she had last smoked crack in 2006, and she had last smoked marijuana around February of 2012. (R.87). The only toxicology report is dated August 30, 2012, at which time plaintiff tested negative for all drugs, including cannabinoids. (R. 594).

Plaintiff argues that at a minimum the ALJ should have adopted the diagnoses of post-traumatic stress disorder and major depression recurrent by Dr. Kenneth Goetz in January of 2012. (R. 516). At the time of his evaluation, plaintiff had reported to Dr. Goetz that she had been off marijuana for two months. (Id.) At the hearing, Dr. Gitlow testified that if there had been a negative toxicology screening at that time, he would agree with Dr. Goetz's diagnoses. (R. 72-73).

Plaintiff's contention is that it was improper for the ALJ to conclude that plaintiff did not have a sufficient period of sobriety prior to Dr. Goetz's diagnoses based solely on the absence of a negative drug screening. However, as already noted, the regulations require an

impairment to be established by medical evidence, not just a claimant's statements. 20 C.F.R. §416.908. Dr. Gitlow also indicated that he was skeptical about plaintiff's claim that she had been clean for 2 months at the time of Dr. Goetz's January 2012 diagnoses, nothing that he "would have a hard time believing" that someone who used marijuana daily for a long period of time "suddenly stopped using [it] completely and totally." (R. 74). Indeed, plaintiff testified at the hearing that she used marijuana again in February of 2012, after Dr. Goetz's diagnosis. (R. 87).

Upon review of the record, and in particular the transcript of Dr. Gitlow's testimony, the court is satisfied that the ALJ did not err in accepting Dr. Gitlow's opinion that in the absence of a documented period of sobriety, as confirmed by a toxicology report, plaintiff's non-substance related mental health impairments are not properly diagnosed medically determinable impairments within the meaning of the regulations, but instead are symptoms of plaintiff's substance-related impairment of cannabis dependence. The ALJ adequately explained in the decision his rationale for adopting Dr. Gitlow's opinion and his determination is supported by substantial evidence.

Moreover, it should be emphasized that even if the ALJ had been incorrect in concluding that plaintiff's non-substance related mental health diagnoses are not medically determinable severe impairments, such an error would not have affected the ultimate determination of not disabled in this case. It is axiomatic that disability is not determined merely by the presence of an impairment, but by the effect that impairment has upon the individual's ability to perform substantial gainful activity. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991).

AO 72
(Rev. 8/82)

Here, although the ALJ did not consider plaintiff's mental health diagnoses to be medically determinable severe impairments, he nevertheless considered them to be *symptoms* of plaintiff's medically determinable severe impairment of cannabis dependence, and, as such, he considered them at both step 3 in determining whether plaintiff meets a listed impairment and, importantly, to the extent plaintiff's symptoms resulted in limitations, the ALJ accounted for them in the residual functional capacity finding by restricting plaintiff to "simple, routine, and repetitive tasks that are not fast-paced and require only simple work-related decisions" and "incidental collaboration with co-workers and the public and interaction with supervisors one-sixth of the time." (R. 21).

Plaintiff's next argument is that the ALJ improperly analyzed the medical evidence. Specifically, she argues that the ALJ improperly discounted the opinions of her treating psychiatrist, Dr. Goetz, who opined that plaintiff is unable to obtain and sustain full-time employment and is permanently disabled, (R. 502; 518-19; 585-590), and of the consultative psychiatrist, Dr. Robert Eisler, who opined that plaintiff is "quite unemployable" and found her to have marked to extreme limitations in her ability to perform nearly all areas of work-related mental health functioning. (R. 553-559).

The rules by which the ALJ is to evaluate the medical evidence are well-established under the Social Security Regulations and the law of this circuit. Opinions of treating physicians are entitled to substantial, and at times even controlling, weight. 20 C.F.R. §416.927(c)(2); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Where a treating physician's opinion on the nature and severity of an impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be given controlling weight. Id. However, when a

treating source's opinion is not entitled to controlling weight, it is to be evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors, including the opinion's supportability, consistency and specialization. 20 C.F.R. §416.927(c).

Importantly, the opinion of any physician, including a treating physician, as to the claimant's residual functional capacity, or on the ultimate determination of disability, never is entitled to special significance. 20 C.F.R. §416.927(d); SSR 96-5p. "The law is clear ... that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Brown v. Astrue, 649 F.3d 193, 197 n. 2 (3d Cir. 2011). Rather, "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Chandler v. Commissioner of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011); see 20 C.F.R. §§416.927(d)(2) and (3); 416.946(c).

Here, the ALJ adhered to the foregoing standards in evaluating the medical evidence. His decision specifically addresses and exhaustively discusses all of the opinions from all of the relevant medical sources, and, in particular, the opinions of Dr. Goetz and Dr. Eisler, and the ALJ adequately explains his reasons for the weight he gave to each. (R. 23-28).

In particular, the ALJ found that Dr. Goetz's findings are inconsistent with his own treatment records and that he relied quite heavily on plaintiff's subjective report of symptoms and limitations, which he "seemed to uncritically accept as true." (R. 24-25). Accordingly, the ALJ determined that Dr. Goetz's opinions were entitled to "little weight" in assessing plaintiff's overall level of functioning.[2] Likewise, the ALJ specifically addressed Dr. Eisler's

---

[2] Although plaintiff does not challenge explicitly the ALJ's credibility determination in this appeal, the court nevertheless finds no error in the ALJ's evaluation of plaintiff's subjective allegations of her limitations. As required under the Regulations, the ALJ properly considered plaintiff's subjective statements in light of the objective medical evidence as well as all of the other factors relevant to plaintiff's

opinion and adequately explained how it "diverges significantly from the other evidence of record." (R. 25)

It is axiomatic in social security cases that the ALJ must give some indication of the evidence that he rejects and the reasons for discounting that evidence. Fargnoli, 247 F.3d at 43. Here, the ALJ reviewed and discussed all of the pertinent medical evidence and thoroughly explained his reasons for giving the weight that he gave to all of the medical source opinions. The court has reviewed the ALJ's decision and the record as a whole and is satisfied that the ALJ's evaluation of the medical evidence is supported by substantial evidence.

Plaintiff next argues that the ALJ erred at step 3 by finding that plaintiff does not meet or medically equal the criteria of Listings 12.04 (Affective Disorders) and 12.06 (Anxiety-Related Disorders) of the listed impairments. Upon review, the court is satisfied that the ALJ's step 3 finding also is supported by substantial evidence.

At step 3, the ALJ must determine whether the claimant's impairment matches, or is equivalent to, one of the listed impairments. Burnett v. Commissioner of Social Security Administration, 220 F.3d 112, 119 (3d Cir. 2000). The listings describe impairments that prevent an adult, regardless of age, education, or work experience, from performing any gainful activity. Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir. 2000); 20 C.F.R. §416.920(d). "If the impairment is equivalent to a listed impairment then [the claimant] is *per se* disabled and no further analysis is necessary." Burnett, 220 F.3d at 119.

The burden is on the ALJ to identify the relevant listed impairment in the federal regulations that compares with the claimant's impairment. Id. at 120 n.2. The ALJ must "fully

---

symptoms as set forth in 20 C.F.R. §416.929(c); *see also* SSR 96-7p. The ALJ did a thorough job in his decision explaining why plaintiff's statements concerning "the intensity, persistence and limiting effects" of her symptoms are "not entirely credible," (R. 22-23), and his evaluation is supported by substantial evidence as outlined in his decision.

develop the record and explain his findings at step 3, including an analysis of whether and why [the claimant's] ... impairments ... are or are not equivalent in severity to one of the listed impairments." Id.

The ALJ in this case correctly identified Listing 12.09 for substance addiction disorders as the relevant listing for plaintiff's medically determinable severe impairment of cannabis dependence. Pursuant to 12.09, the required level of severity is met when the requirements of, *inter alia*, Listing 12.04 or 12.06 are met. The required level of severity for either 12.04 and 12.06 is met only when <u>both</u> the "A" <u>and</u> "B" criteria of the particular listing are satisfied, <u>or</u> when the "A" criteria <u>and</u> "C" criteria are met. 20 C.F.R., Part 404, Subpart P, Appendix 1, §§12.04 and 12.06. In this case, plaintiff challenges the ALJ's finding that she does not meet the "B" criteria of either Listing.

The "B" criteria of listing 12.04 and 12.06 are identical and require that a claimant's mental impairment must result in at least two of the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence or pace; or, 4. Repeated episodes of decompensation, each of extended duration." 20 C.F.R., Part 404, Subpart P, Appendix 1, Listings 12.04B and 12.06B. (emphasis added).

Here, the ALJ reviewed the evidence and determined that plaintiff's substance addiction disorder results in <u>mild</u> restrictions in activities of daily living; <u>moderate</u> difficulties in maintaining social functioning; <u>moderate</u> difficulties in concentration, persistence or pace, and no episodes of decompensation. (R. 19-20). Because plaintiff's disorder does not result in marked limitations in at least two areas, or marked limitation in one area along with repeated

episodes of decompensation, each of extended duration, the ALJ found that plaintiff does not meet the "B" criteria of 12.04 or 12.06, and, therefore, does not meet Listing 12.09.

Plaintiff argues that the ALJ should have accepted the opinion of Dr. Goetz that plaintiff meets Listings 12.04 and 12.06 because she has "marked" restrictions in activities of daily living, "extreme" limitations in maintaining social functioning, "constant" deficiencies of concentration, persistence and pace; and, "continual" episodes of deterioration or decompensation. (R. 590). However, as already discussed, the ALJ properly afforded Dr. Goetz's findings little weight because they are inconsistent with his treatment records and are overly reliant on plaintiff's subjective reports of symptoms and limitations. (R. 24-25). Instead, the ALJ chose to give controlling weight to Dr. Gitlow's findings, which also were supported by the opinion of the state agency psychologist,[3] Dr. Michelle Santilli, as those opinions are more consistent with the weight of the evidence as outlined in the ALJ's decision.[4] (R. 19-20; 26). The court finds no error in the ALJ's decision at step 3 to disregard the unsupported opinion of Dr. Goetz in favor of the opinions of Dr. Gitlow and, to a lesser extent, Dr. Santilli.

Although plaintiff contends that both the ALJ and Dr. Gitlow indicated that they would have accepted Dr. Goetz's conclusions if there had been a negative drug test, neither actually did so. Dr. Gitlow indicated that he would have accepted Dr. Goetz's *diagnoses* of non-

---

[3] State agency medical consultants are "highly qualified physicians ... who are also experts in Social Security disability evaluation." 20 C.F.R. §416.927(e)(2)(i). Accordingly, while not bound by findings made by reviewing physicians, the ALJ is to consider those findings as opinion evidence, and is to evaluate them under the same standards as all other medical opinion evidence. 20 C.F.R. §416.927(e)(2)(ii); SSR 96 6p

[4] It should be noted that the ALJ did not accept Dr. Santilli's opinion in its entirety and in fact gave plaintiff the benefit of the doubt in assessing his residual functional capacity by finding that plaintiff's "drug use causes greater limitations than those provided by Dr. Santilli." (R.26)

substance abuse related mental health impairments had there been a negative drug screening evidencing a sufficient period of sobriety, but his testimony strongly suggests that in any event he did not agree with the extreme restrictions that Dr. Goetz found in plaintiff's ability to function. (R. 78-79). Likewise, the ALJ stated that while plaintiff would meet Listing 12.04 and 12.06 if Dr. Goetz's questionnaire was accepted, he also made clear that Dr. Goetz's conclusions in that questionnaire are not supported by the mental status findings. (R. 77; 81). The court is satisfied that the ALJ's step 3 rationale is well-reasoned and supported by substantial evidence as outlined in his decision.

Plaintiff's remaining arguments are that the ALJ's residual functional capacity finding[5] and hypothetical to the vocational expert failed to account for all of plaintiff's work-related limitations, specifically, the "marked" to "extreme" limitations in areas of work-related mental health functioning as advanced by Dr. Eisler in his report. (R. 558) Plaintiff contends that the ALJ improperly rejected the vocational expert's testimony that these additional limitations would preclude employment. (R. 98-100).

However, as already discussed, the more restrictive limitations advanced by plaintiff simply are not supported by the objective medical evidence. As a hypothetical to the vocational expert must reflect only those impairments and limitations supported by the record, the ALJ did not err in rejecting a response to a hypothetical incorporating limitations not

---

[5] Residual functional capacity is defined as the most an individual still can do in a work setting despite the limitations caused by his impairments. Fargnoli, 247 F.3d at 40; 20 C.F.R. §416.945(a)(1). Residual functional capacity is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work-setting on a regular and continuing basis, which means "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p. In assessing residual functional capacity, the ALJ is to consider all of the relevant medical and other evidence in the case record in determining the individual's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §416.945(a)(3)-(4); SSR 96-8p. The ALJ's residual functional capacity finding must "'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 577 F.3d at 41 (citation omitted).

supported by the medical evidence. *See* Jones v. Barnhart, 364 F.3d 501, 506 (3d Cir. 2004)(ALJ has authority to disregard vocational expert's response to hypothetical inconsistent with evidence).

The court is satisfied that the ALJ's residual functional capacity finding in this case is supported by substantial evidence as outlined in the decision and that the ALJ's hypothetical to the vocational expert incorporating that residual functional capacity finding adequately accounted for all of plaintiff's mental and physical limitations that are supported by the objective evidence. Podedworny v. Harris, 745 F.2d 210 (3d Cir. 1984)(RFC and hypothetical to the vocational expert must reflect only those impairments and limitations supported by the record). Accordingly, the vocational expert's response to that hypothetical indicating that, despite those restrictions, plaintiff retains the ability to perform the identified light jobs, constitutes substantial evidence supporting the ALJ's finding that plaintiff is not disabled.

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

                                          s/Gustave Diamond
                                          Gustave Diamond
                                          United States District Judge

cc: Christine M. Nebel, Esq.
220 South Main Street
Suite D
Butler, PA 16001

Paul Kovac
Assistant U.S. Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219

AO 72
(Rev. 8/82)